UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MA GLINDA CHO,<br>*Plaintiff*,<br>v.<br>TOURNEAU BUCHERER, *et al.*,<br>*Defendants*. | No. 25-CV-6735 (KMK)<br>OPINION & ORDER |

Appearances:

Erica T. Kagan, Esq.
Filippatos PLLC
New York, NY
*Counsel for Plaintiff*

Bryan P. DeStefano, Esq.
Gordon Rees Scully Mansukhani LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Ma Glinda Cho ("Plaintiff") brings this Action against Tourneau Bucherer ("Tourneau") and Angelina Petrova ("Petrova") (collectively, "Defendants"), alleging she was discriminated against while working at Tourneau for speaking Tagalog in the workplace and retaliated against for reporting and discussing the alleged discrimination. Before the Court is Defendants' Partial Motion to Dismiss (the "Motion") as to the Amended Complaint's ("AC") allegations against Petrova. For the following reasons, the Court grants the Motion as to Plaintiff's discrimination claims against Petrova under the NYSHRL and § 1981 and denies it as to Plaintiff's retaliation claims against Petrova under the NYSHRL and § 1981.

## I. Background

### A. Factual Background

The Court assumes the factual allegations in the Amended Complaint are true for the purposes of Defendants' Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Tourneau hired Plaintiff, a Filipino woman, to work at its Westchester store as an Assistant Store Director in February 2024. (AC ¶¶ 11, 16 (Dkt. No. 14).) Through all relevant times, Plaintiff alleges she "excelled in her position," "driving double-digit growth," among other accomplishments. (*Id.* ¶¶ 17–18.) The Store Director position became vacant in March; Plaintiff applied for it, and while her application was pending, Tourneau placed her in the role on an interim capacity in April 2024. (*Id.* ¶¶ 19–20.) Plaintiff alleges that she "continued to thrive" in that role in the following months.[1] (*Id.* ¶¶ 22–28.)

Tourneau eventually filled the Store Director position on a permanent basis with an external hire, Petrova, on August 26, 2024. (*Id.* ¶ 30.) Plaintiff alleges Petrova made a number of comments to employees at the store that "created an atmosphere of discomfort," including about the cleanliness of the store and their performance. (*Id.* ¶¶ 35, 37–39.) On September 30, 2024, Petrova called Plaintiff into her office, "where she explicitly instructed [Plaintiff] not to speak in her native language, Tagalog," in the store. (*Id.* ¶ 41.) Petrova explained that while she had received no complaints about Plaintiff's use of Tagalog, she felt that "[i]n a professional setting[,] we should speak the common language[,] which is English," which she said in "an

---

[1] There are some minor inconsistencies in the Amended Complaint's timeline—for example, it refers to an event in June 2024 as "five months" after an event in March 2024 and "four months" after an event in April 2024. (*See* AC ¶¶ 19–20, 22.)

intimidating tone." (*Id.* ¶ 42.) Plaintiff alleges that her use of Tagalog had no impact on her workplace because she "only spoke Tagalog in the back office or when assisting clients who specifically requested translations." (*Id.* ¶ 43.) Plaintiff mentioned to Petrova that "other team members regularly spoke in other languages, such as Spanish, without consequence," but Petrova responded that she "did not observe it, so it does not matter." (*Id.* ¶¶ 45–46.) The same day, Petrova instructed another Tagalog speaker at Tourneau "not to speak Tagalog." (*Id.* ¶ 46.)

Plaintiff submitted a harassment and discrimination complaint to Human Resources ("HR") at Tourneau on October 11, 2024, "detailing the hostile and discriminatory actions" she alleged Petrova took. (*Id.* ¶ 50.) About two weeks later, Plaintiff met the HR director to discuss Plaintiff's complaint, but the HR director "minimized" Plaintiff's allegations. (*Id.* ¶¶ 54–55.) On November 1, 2024, Plaintiff emailed HR and Mathieu Villot ("Villot"), Tourneau's Senior Vice President of Retail, "to report concerns about declining team morale, which had been communicated to her by multiple store associates." (*Id.* ¶ 60.) Plaintiff then met Villot at Tourneau headquarters a few days later to discuss her concerns. (*Id.* ¶ 62.) At the meeting, Plaintiff mentioned the "discrimination . . . she had endured" from Petrova. (*Id.* ¶ 67.) Plaintiff claims Villot "downplay[ed] the discriminatory language directive imposed by . . . Petrova," and then "shifted focus to question [Plaintiff's] management of timecards" at Tourneau, saying something about that aspect of her role was "unprofessional." (*Id.* ¶¶ 68–71.)

Plaintiff engaged counsel sometime thereafter. (*Id.* ¶ 75.) Shortly after her counsel notified Tourneau of her claims, Plaintiff claims Petrova sent her a "corrective action document," or "CAD," which was "unsupported" and "accused Plaintiff of 'insubordination,'" referencing Plaintiff's "conduct of reporting her concerns of discrimination, harassment, and retaliation" to HR rather than to Petrova, and instructing Plaintiff to "improve her partnership" with Petrova.

(*Id.* ¶¶ 75–77.) In January 2025, less than one month after Plaintiff received the CAD, Petrova "decided to terminate [Plaintiff]'s employment with" Tourneau. (*Id.* ¶ 82.)

B. Procedural Background

Plaintiff initiated this Action on August 14, 2025. (*See* Compl. (Dkt. No. 1).) Defendants sought the Court's leave to move to dismiss the original Complaint's allegations as to Petrova on October 9, 2025. (*See* Letter from Defs. to Court (Oct. 9, 2025) (Dkt. No. 11).) In response, Plaintiff requested leave to amend her Complaint on October 16, 2025, (*see* Letter from Pl. to Court (Oct. 16, 2025) (Dkt. No. 12)), which the Court granted on October 17, 2025, (*see* Memo Endorsement (Dkt. No. 13)). Plaintiff filed the AC on October 23, 2025. (*See* AC.) Defendants moved to dismiss the AC's causes of action asserted against Petrova individually on January 30, 2026. (*See* Notice of Partial Mot. to Dismiss for Failure to State a Claim (Dkt. No. 19); Defs.' Mem. in Supp re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 20).) Plaintiff filed her Memorandum in Opposition on March 13, 2026. (*See* Pl.'s Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 22).) Defendants replied on March 27, 2026. (*See* Reply Mem. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 23).)

## II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (citation omitted and alteration adopted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

B. Analysis

1. Discrimination Claims

Plaintiff's third and fifth causes of action are, respectively, § 1981 and NYSHRL discrimination claims asserted against both Tourneau and Petrova, which Defendants seek to dismiss only as to Petrova, and her seventh cause of action is against Petrova under the NYSHRL for aiding and abetting discrimination.[2] (*See* AC ¶¶ 107–11, 117–21, 127–31.)

The elements of a prima facie claim of discrimination are the same whether brought under § 1981 or the NYSHRL.[3] *See Hargett v. Metro. Trans. Auth.*, 552 F. Supp. 2d 393, 406 (S.D.N.Y. 2008) ("The elements of a § 1981 and NYSHRL employment discrimination claim are identical."); *Whitehurst v. 230 Fifth, Inc.*, No. 11-CV-767, 2011 WL 3163495, at *9 (S.D.N.Y.

---

[2] A "hostile work environment claim may be brought against an individual pursuant to § 1981," but "the [Amended C]omplaint asserts no such claim," *Tolbert v. Smith*, 790 F.3d 427, 438 n.10 (2d Cir. 2015), though it occasionally refers to Defendants having created a "hostile work environment," (*see* AC ¶¶ 32, 93). As Plaintiff is represented by counsel, the Court does not construe her Amended Complaint to raise such a claim.

[3] While the elements of a prima facie case remain the same, the 2019 amendments to the NYSHRL provide for a liberal construction of those elements, or at least one that is no less liberal than the construction of the elements of a federal claim. *See Farah v. Emirates & Emirates Severance Plan*, 728 F. Supp. 3d 290, 302 (S.D.N.Y. 2024).

July 26, 2011) ("The same standard applies for claims of discrimination pursuant to Section 1981 [and the] NYSHRL[.]"). To state a claim, a plaintiff must plausibly allege at the pleadings stage that "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quotation marks and citation omitted); *see also Phillips v. United Food & Comm. Workers Union Loc. 2013*, No. 23-CV-8283, 2025 WL 2659087, at *8 (S.D.N.Y. Sept. 17, 2025) (same). Under the NYSHRL as amended, however, a plaintiff need not allege an adverse employment action for the third element of a prima facie case—she need only allege she was "treated . . . less well, at least in part for a discriminatory reason." *Everett v. New York City Dep't of Educ.*, No. 21-CV-7043, 2023 WL 5629295, at *11 (S.D.N.Y. Aug. 31, 2023) (quotation marks and citation omitted); *see also Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (substantially same). To bring an aiding or abetting claim under the NYSHRL against an individual defendant, a plaintiff must "adequately allege that the employer engaged in discrimination . . . under the standards of the NYSHRL," that the individual defendant "actually participated in such unlawful conduct by the employer," and that "the aider and abettor share[d] the intent or purpose of the principal actor." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 n.7, 74 n.12 (S.D.N.Y. 2020) (quotation marks and alterations omitted); *see also Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2021) (same).

a. NYSHRL Discrimination Claim Against Petrova

Plaintiff seeks to hold Petrova liable for discrimination under the NYSHRL on two theories: first, directly for discrimination under § 296(1), (*see* AC ¶¶ 117–21), and second, for aiding or abetting discrimination under § 296(6), (*see id.* ¶¶ 127–31).

The Court begins with the first cause of action. Defendants argue Petrova cannot be held liable directly for discrimination because the NYSHRL limits "direct individual liability . . . [to] individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees," (Defs.' Mem. 16), and Plaintiff retorts that she may assert a discrimination claim against an individual defendant where the "defendant participated in the conduct giving rise to the claim of unlawful discrimination," (Pl.'s Mem. 7). Neither is correct. Defendants' position was rejected in *Doe v. Bloomberg*, in which the New York Court of Appeals held an individual's ownership interest in an employer "d[id] not transform him into an employer for purposes of vicarious liability for [another employee's] discriminatory conduct." 167 N.E.3d 454, 463 (N.Y. 2021). And Plaintiff's view is correct as to *other* provisions of the NYSHRL, like § 296(6), which expressly contemplates liability for employees, because it makes it an "unlawful discriminatory practice for *any person* to aid, abet, incite, compel, or coerce" violations of any other provision of the NYSHRL, N.Y. Exec. L. § 296(6) (emphasis added), and *does* require a showing of actual participation, *see Frank v. Lawrence Union Free Sch. Dist.*, 688 F. Supp. 2d 160, 174 (E.D.N.Y. 2010); *see also Reichert v. Casa Sys., Inc.*, No. 24-CV-996, 2026 WL 867137, at *9 (S.D.N.Y. Mar. 30, 2026) ("[The p]laintiff need not establish that [the individual defendants] are employers to prevail on her claims, nor could she after *Doe*, so long as [the p]laintiff shows they could be liable as individuals under another provision of § 296 than § 296(1)."). But Plaintiff's view is incorrect as to § 296(1)'s direct prohibition on discrimination

by employers, which *Doe v. Bloomberg* held did not apply to corporate employees. *Doe*, 167 N.E.3d at 459 (explaining that under "the state statutes . . . a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer"); *see also Cho v. Osaka Zen Spa*, No. 19-CV-7935, 2026 WL 2640854, at *22 (S.D.N.Y. Sept. 8, 2026) ("[*Doe*] does not . . . foreclose liability against individuals who are affiliated with corporate employers. Rather, . . . under [the NYSHRL] statutes, 'any person'—regardless of their relationship to the employer—is liable for aiding and abetting other liable persons or retaliating against protected conduct."); *Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *12 (S.D.N.Y. Mar. 30, 2026) (explaining that *Doe* did not "mean[] to cut off *every* route by which an employee at a corporation might be held individually liable based on his discriminatory actions," but "simply suggest[ed] that these individuals are not 'employers' and so are not liable under [§] 296(1)"); *Santana v. Yonkers City Sch. Dist.*, 205 N.Y.S.3d 691, 699 (Sup. Ct. 2023) ("As principal of Roosevelt High School, [the defendant] was not an employer within the meaning of Executive Law § 292(5), and cannot be held personally liable for violation of Executive Law § 296(1).").

In short, because Petrova is not an "employer" for the purposes of § 296(1), Plaintiff's fifth cause of action is dismissed as against Petrova, but she may still be held individually liable under Plaintiff's seventh cause of action as "any person" under § 296(6) if Plaintiff can plausibly allege the statute encompasses her conduct.

The Court next turns to Plaintiff's § 296(6) theory. Defendants argue, and Plaintiff does not contest, that an individual defendant cannot be held liable for aiding and abetting her own conduct, (*see* Defs.' Mem. 24), and it is intuitive from the meanings of "incite," "compel," and

"coerce" that a person cannot incite, compel, or coerce *themselves* to violate the statute.[4] Rather, personal involvement in the conduct of *another* that would violate the statute is required. *See Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *11 (S.D.N.Y. May 23, 2023) ("Under the NYSHRL, individuals may not be held liable merely for aiding and abetting [their] own discriminatory conduct but only for assisting another party in violating that law." (alterations adopted)). "A plaintiff may establish personal involvement" by a defendant in another party's violation of the NYSHRL "by showing that:"

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Latif v. City of New York*, No. 20-CV-8248, 2024 WL 1348827, at *5 (S.D.N.Y. Mar. 28, 2024) (quoting in part *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015)).

Plaintiff's § 296(6) claim fails because the AC does not plead any facts suggesting Petrova was involved in somebody else's conduct that violated the NYSHRL. Plaintiff has

---

[4] *See Incite*, Black's Law Dictionary (12th ed. 2024) ("To provoke or stir up (someone to commit a criminal act, or the criminal act itself)."); *Coerce*, Black's Law Dictionary (12th ed. 2024) ("To compel by force or threat."); *Compel*, Black's Law Dictionary (12th ed. 2024) ("To cause or bring about by force, threats, or overwhelming pressure," and citing as an example compelling a lawyer to testify about privileged communications).

Plaintiff does not argue, so the Court need not address, whether Petrova could be understood to have aided, incited, or compelled the corporate entity of her employer in violating the NYSHRL. *See Trapani v. Freeport Pub. Sch. Dist.*, No. 24-CV-3005, 2025 WL 2306658, at *6 (E.D.N.Y. May 2, 2025) ("It is unclear from *Tomka*'s holding, however, whether the Second Circuit concluded that the co-workers were liable because they aided and abetted each other's conduct, or because their conduct imposed liability on their employer, which liability the co-workers aided and abetted." (discussing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995))), *report and recommendation adopted*, 2025 WL 1812324 (E.D.N.Y. July 2, 2025).

argued that Petrova herself was responsible for instructing Plaintiff not to speak Tagalog and for ultimately terminating Plaintiff, among other conduct. (*See* Pl.'s Mem. 13–14 ("Defendant Petrova . . . was the one to ban the use of Tagalog . . . took part in terminating Ms. Cho . . . compelled Mr. Villot and members of HR to act unlawfully when they brushed off Ms. Cho's concerns of discrimination, issued an unsupported CAD, and ultimately terminated Ms. Cho for discriminatory reasons.").) Contrary to the characterization in Plaintiff's Opposition Memorandum, the AC does not mention anybody's role in the issuance of the CAD but Petrova's, (*see* AC ¶¶ 75–76 ("[Plaintiff] was issued an unsupported [CAD] by Defendant *Petrova*[.]" (emphasis added))), nor anybody else's role in Plaintiff's termination, (*see id.* ¶ 82 ("*Petrova* . . . had decided to terminate [Plaintiff's] employment[.]" (emphasis added))), making clear Plaintiff's theory that Petrova is a primary violator, not an aider or abettor.

In her Memorandum, Plaintiff offers two potential sources of aiding-and-abetting liability: that Petrova aided, abetted, or incited violations of the statute by Villot, and by "members of HR." (Pl.'s Mem. 13.) But while the AC alleges Villot responded to Plaintiff's complaint about Petrova's language policy by saying "Petrova had the authority to manage as she saw fit," (AC ¶ 70), that does not show that *Petrova* aided or incited *Villot* to maintain the policy, or that Petrova at all participated in some primary NYSHRL violation of Villot's so as to establish *Petrova*'s liability under § 296(6).[5] Similarly, Plaintiff's allegations that HR employees

[5] That Villot outranked Petrova at Tourneau is not enough to establish primary liability on its own. *See Beniquez v. New York State Unified Ct. Sys.*, No. 23-CV-7735, 2025 WL 861299, at *7 (S.D.N.Y. Mar. 18, 2025) (noting that the "proposition that a supervisor violates the NYSHRL when they fail to take appropriate action in response to a complaint of harassment or discrimination" against somebody else "has multiple deficiencies"); *Campo v. City of New York*, No. 19-CV-4364, 2022 WL 970730, at *25 (E.D.N.Y. Mar. 31, 2022) (explaining that "[f]or a supervisor to be held liable for 'aiding and abetting' discrimination or retaliation [under the NYSHRL], . . . a plaintiff must show that the supervisor 'actually participated' in the conduct

"minimized . . . Petrova's behavior" in a meeting, (*id.* ¶ 55), do not establish that *Petrova* aided *them* in some violation of the statute. Nor does the AC include allegations about Villot's or HR's intent, which it must to show Petrova aided them. *See McHenry*, 510 F. Supp. 3d at 68. In other words, Plaintiff has not established that Petrova was personally involved in conduct by Villot or any HR employee that could have established a primary violation of the NYSHRL, and none of the five examples of personal involvement articulated in *Littlejohn* is applicable to Petrova with respect to Villot's or HR's conduct.

Accordingly, by the plain text of § 296(6), Petrova cannot be liable thereunder for her own conduct, and Plaintiff has not established Petrova's involvement in or responsibility for another's primary violations of the NYSHRL, so the NYSHRL discrimination claims against Petrova must be dismissed.

b. § 1981 Discrimination Claim Against Petrova

Defendants next contend that Plaintiff's § 1981 claim must be dismissed because she "has not pled discriminatory intent served as a but-for cause of any adverse employment action she might have experienced" and has not adequately alleged Petrova's personal involvement in any discriminatory acts. (Defs.' Mem. 15, 17.) The Court begins with whether Plaintiff has alleged Petrova's personal involvement in conduct that could plausibly violate § 1981, and then addresses whether Plaintiff has alleged discrimination was a but-for cause of her termination.

giving rise to the discrimination or retaliation claim" and noting jury could find actual participation from "grossly negligent supervision of subordinates who sexually harassed" the plaintiff, despite prior complaints (citing *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011))).

What Defendants couch as a personal involvement argument is better understood as an argument that Petrova's alleged imposition of an English-only requirement was not a "circumstance[] giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150. (*See* Defs.' Mem. 19–20 (contending "Plaintiff never alleges Petrova made this request because of Plaintiff's race and ethnicity"); *id.* (contending "workplace language requirements do not necessarily constitute discrimination" and did not here (alteration adopted)).)

The AC's inference of discriminatory intent rests on allegations that Petrova singled out Tagalog in the workplace and instructed Plaintiff not to speak it notwithstanding Plaintiff's responses that it did not disrupt the workplace and that other employees spoke other languages at the store. (*See* Pl.'s Mem. 7–8.) "[C]ourts have recognized that an employer's English-only policy can, in certain circumstances, support a Title VII [or § 1981] claim of racial discrimination," but that an English-only policy does not *per se* violate antidiscrimination laws because those laws do not provide employees a "right to speak [their] native tongue while on the job." *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009) (citation omitted); *id.* at 629 (applying the same conclusions to § 1981). More specifically, "courts have recognized two situations where [English-only] requirements may constitute discrimination on the basis of national origin." *Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-CV-4507, 2016 WL 1268274, at *4 (S.D.N.Y. Mar. 31, 2016).[6] The first such situation

[6] Because the Parties do not discuss this in their briefing, the Court assumes without deciding that discrimination against Plaintiff for speaking Tagalog is not only discrimination on the basis of national origin, but also discrimination on the basis of ethnicity or ancestry for the purposes of § 1981. Although the distinction is certainly subtle, the Second Circuit has explained that § 1981 applies to discrimination based on "ancestry, or ethnic characteristics," *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987), but it "does not prohibit discrimination on the basis of . . . national origin," *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998). These categories are not mutually exclusive, however, and the Court assumes they

is when a defendant "prohibit[s] employees from conducting personal matters in languages other than English during . . . non-working hours" at the workplace. *Id.* (citing *Levitant v. City of New York Human Res. Admin.*, 625 F. Supp. 2d 85, 99 (E.D.N.Y. 2008)); *see also Dominguez v. Mega Mart LLC*, No. 23-CV-1372, 2026 WL 865824, at *6 n.7 (E.D.N.Y. Mar. 30, 2026) (agreeing that "policies prohibiting employees from conducting personal matters in their own language during non-working hours can give rise to a hostile work environment claim"). The second is when a defendant "prohibit[s] certain non-English languages in the workplace while permitting others." *Lopez*, 2016 WL 1268274, at *4 (citing *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 263 (S.D.N.Y. 2000)).

Plaintiff leans on the second of the two situations.[7] She alleges that Petrova "explicitly instructed [her] not to speak . . . Tagalog" and gave the same instruction to another Filipino employee. (AC ¶¶ 41, 46.) Nevertheless, Plaintiff alleges other employees "regularly spoke in other languages, such as Spanish, without consequence." (*Id.* ¶ 45.) When she mentioned this to Petrova, she claims Petrova responded that it "does not matter" because she "did not observe" other employees speaking Spanish. (*Id.* ¶ 46.) Defendants argue these allegations do not explicitly show Petrova "prohibited Tagalog while allowing the use of other non-English languages." (Defs.' Mem. 20.) Indeed, Plaintiff has not *explicitly* alleged as much. (*See*

---

overlap here. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) (explaining that "one's ancestry . . . is not necessarily the same as one's national origin," but that "[o]ften, however, the two are identical as a factual matter").

[7] The first situation—a prohibition on English during non-working hours—is not alleged here. Plaintiff claims she only spoke Tagalog when "assisting clients" or in the "back office," but she does not allege either of these constituted non-working hours. (AC ¶ 43.) It is intuitive enough that "assisting clients" at Tourneau is part of Plaintiff's working duties, and the Amended Complaint includes examples of workplace interactions taking place in the back office. (*See, e.g.*, *id.* ¶ 36.)

*generally* AC ¶¶ 42–46.) But the Court is obligated on a motion to dismiss to draw all reasonable inferences in her favor. *See Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 374 (2d Cir. 2024). And it is reasonable to infer from the facts alleged that Petrova at least tolerated the use of other languages at Tourneau—other employees "regularly" spoke other languages at the workplace, and Petrova was aware both Plaintiff and her colleague had spoken Tagalog, so Petrova's awareness of others speaking Spanish is a reasonable inference, and they did so "without consequence," so her tolerance thereof is a reasonable inference as well. (AC ¶ 45.) Likewise, Plaintiff's allegation that Petrova "targeted" her and another Tagalog speaker "based on their use of" Tagalog supports the inference that the same policy was not imposed on speakers of other languages. (*Id.* ¶ 48.) Accordingly, Plaintiff has minimally, but plausibly, alleged circumstances giving rise to an inference of discriminatory intent at this early stage.

A closer question is whether Plaintiff has shown *discriminatory* intent was the but-for cause of an adverse employment action. By Plaintiff's concession, the only sufficiently adverse action for her § 1981 discrimination claim is her termination. (*See* Defs.' Mem. 14–15, 15 n.7, 23 n.14 (not disputing Plaintiff's termination as an adverse employment action, but contending Plaintiff had not otherwise pled an adverse employment action); Pl.'s Mem. 7 (not contesting Defendants' arguments and only pointing to Plaintiff's termination).) *See Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021) ("Numerous courts in this District have held that a party's failure to address an issue in its response to a Rule 12(b)(6) motion amounts to a concession or [forfeiture] of the argument." (quotation marks omitted)).

Under Title VII and the NYSHRL, "[P]laintiff need not prove (or plead) that the causal link between injury and wrong is so close that the injury would not have occurred but for the act," *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 453 (S.D.N.Y.

2023), but under § 1981, "to prevail, a plaintiff must initially plead and ultimately prove that, but for race," or another category covered by § 1981 such as ancestry or ethnicity, "[she] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Ass'n of Afr.-Am. Owned Media*, 589 U.S. 327, 341 (2020).

Here, Plaintiff has not stated a § 1981 claim because she has not plausibly shown that *but for her race*, she would not have been fired. First, and most straightforwardly, Defendants argued extensively in their Memorandum that Plaintiff did not adequately allege she would not have been fired but for her race in support of her § 1981 discrimination claim, (*see* Defs.' Mem. 14–15), and Plaintiff's Memorandum does not respond to but-for causation at all, (*see* Pl.'s Mem. 8–9). That forfeits any but-for causation argument and is, alone, fatal to Plaintiff's § 1981 discrimination claim. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (same).

Looking beyond the moving papers, the AC at no point alleges discrimination was a but-for cause of Plaintiff's termination, which, too, is fatal under *Comcast*. (*See generally* AC.) It certainly allows the inference, as the Court discusses in more detail, that *retaliatory* intent was a cause. (*See* AC ¶¶ 75–82 (claiming the CAD pursuant to which Plaintiff was fired "described . . . [Plaintiff's] protected conduct of reporting her concerns of discrimination, harassment, and retaliation," "failed to acknowledge the discriminatory conduct [Petrova] was subjecting [Plaintiff] to," and "made clear that if Plaintiff engaged in any further protected activity, Defendants would terminate her," and that Plaintiff was terminated "[l]ess than one month after"

receiving the CAD); *id.* ¶ 94 (alleging "Tourneau allowed . . . Petrova to . . . retaliate against Plaintiff . . . ultimately by firing her").) But allegations that a defendant's intent to *retaliate* was a but-for cause of an adverse employment action, although also actionable and often premised on the same factual circumstances, *e.g.*, *Hayes v. Cablevision Sys. New York City Corp. for Brooklyn*, No. 07-CV-2438, 2010 WL 2026111, at *3 (E.D.N.Y. May 20, 2010), do not accordingly mean that an intent to *discriminate* was a but-for cause of an adverse action because the two concepts are not identical, *see Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-CV-2928, 2024 WL 3718675, at *15 (E.D.N.Y. Aug. 8, 2024) (dismissing discriminatory hostile work environment claim where plaintiff had alleged adverse actions were "retaliation for her numerous grievances and complaints," because "[r]etaliatory animus is distinct from discriminatory intent"); *cf. Mehringer v. Village of Bloomingdale*, No. 00-CV-7095, 2002 WL 1888364, at *4 (N.D. Ill. Aug. 14, 2002) ("Retaliation and discrimination are distinct wrongs and involve different questions of intent.").

Accordingly, because Plaintiff has not pled adequately, or at all, that discriminatory intent was a but-for cause of Petrova's actions in terminating her, the Court grants Defendant's Motion as to the § 1981 discrimination claim against Petrova.[8]

---

[8] This conclusion does *not* bear on two of Plaintiff's other claims. First, her NYSHRL claim against Tourneau, which Defendants have *not* moved to dismiss, does not require Plaintiff to plead or prove race was the but-for cause of an adverse employment action. *See Kulick v. Gordon Prop. Grp., LLC*, No. 23-CV-9928, 2026 WL 2453598, at *13 (S.D.N.Y. Aug. 21, 2026) ("To state a viable discrimination claim under. . . the post-amendment NYSHRL, a plaintiff need not allege . . . a materially adverse employment action or that 'discriminatory animus was the but-for cause or even the primary motivation of [her] alleged mistreatment.'" (quoting *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023)). Second, Plaintiff's § 1981 retaliation claims are unaffected by a conclusion that her discrimination claim fails, as "[e]ven where a plaintiff's discrimination claim fails, a retaliation claim may survive." *Tse v. New York Univ.*, No. 10-CV-7207, 2013 WL 5288848, at *16 (S.D.N.Y. Sept. 19, 2013) (citing, *inter alia*, *Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002)).

2. NYSHRL and § 1981 Retaliation Claims Against Petrova

Finally, Defendants move to dismiss Plaintiff's § 1981 and NYSHRL retaliation claims. (Defs.' Mem. 20–24.) Like Title VII, "[t]he NYSHRL similarly makes it unlawful for an employer to retaliate or discriminate against an employee because she 'has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified[,] or assisted in any proceeding under this article.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 296(7)). Additionally, the Supreme Court has held that § 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 355 (2013).

Many "[f]ederal and state-law retaliation claims," and specifically, those brought under § 1981 and the NYSHRL, "are subject to the same standards as one another." *Knox v. CRC Mgmt. Co.*, 134 F.4th 39, 49 (2d Cir. 2025). "At the motion to dismiss stage," under either law, "a plaintiff must plausibly allege: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 280 (S.D.N.Y. 2024) (quoting *Littlejohn*, 795 F.3d at 315–16). That basic formulation has caveats relevant to Plaintiff's claims. As to causation, § 1981 retaliation claims require a plaintiff to plausibly allege she would not have been terminated were it not for her protected activity. *See Moy v. Napoli Shkolnik, PLLC*, No. 23-CV-3788, 2024 WL 3498131, at *12 (S.D.N.Y. July 22, 2024) ("Section 1981 requires an allegation of 'but-for' causation. That is, a plaintiff bringing a Section 1981 retaliation claim must allege that 'the adverse employment action would not have occurred in the absence of the employer's retaliatory motive.'" (alterations adopted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015));

*see also Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-7900, 2025 WL 1501751, at *5 (2d Cir. May 27, 2025) (summary order) (substantially same) (citing *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021)). However, that but-for causation standard does not apply to NYSHRL claims; rather, a plaintiff need only allege "there was a causal connection between the protected activity and the adverse action." *Bilitch v. New York City Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245–46 (App. Div. 2021); *Flanagan*, 2025 WL 1501751, at *5 ("The post-amendment NYSHRL standard for causation is lower than Section 1981's but-for standard: it requires only that that the retaliatory conduct was undertaken at least in part because of retaliatory motives." (quotation marks omitted)). Furthermore, "in the context of a Section 1981 retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination," and thus "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *Cadet v. Alliance Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 223 (S.D.N.Y. 2022) (citations and quotation marks omitted); *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (noting the same as to retaliation under the NYSHRL).

Defendants first argue Plaintiff has not alleged that she engaged in protected activity. (Defs.' Mem. 22.) The Second Circuit has defined protected activity as, at its core, "complaining about or otherwise opposing discrimination." *Vega*, 801 F.3d at 91. For a § 1981 retaliation claim, "[p]rotected activity includes any opposition to an employment practice 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the [anti-discrimination] law[s].'" *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 182 (S.D.N.Y. 2024) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)). The same goes for an NYSHRL retaliation claim.

*Kelly*, 716 F.3d at 14. Protected activity need not be a formal complaint—"[f]ormal and informal complaints of discriminatory employment practices can constitute protected activity." *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) (summary order) (evaluating NYSHRL retaliation claim); *Trotter*, 737 F. Supp. 3d at 182 (same, in context of § 1981 claim). But the "protected activity must" be sufficient to "put the employer on notice that the employee feels that [s]he has been the object of discrimination." *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 458 (E.D.N.Y. 2014) (applying § 1981); *Areu v. Fox News Network, LLC*, No. 20-CV-8678, 2021 WL 4124226, at *15 (S.D.N.Y. Sept. 9, 2021) (dismissing claim because there were no allegations of activity that "could plausibly be interpreted as [the plaintiff] protesting or opposing discriminatory conduct" in context of retaliation claim brought under, *inter alia*, NYSHRL).

Plaintiff alleges several protected activities, including some that Defendants enumerate. (*See* Defs.' Mem. 22.) First, Plaintiff claims that on October 11, 2024, she "formally submitted a harassment and discrimination complaint to [HR], detailing the hostile and discriminatory actions she had endured under . . . Petrova's leadership." (AC ¶ 50.) It is an entirely plausible inference that this complaint included the language policy Petrova allegedly imposed, which the AC describes as just such a "discriminatory behavior[]" four paragraphs earlier (setting aside whether that alleged behavior was discriminatory as a matter of law). (AC ¶ 46.) The same goes for Plaintiff's October 28, 2024 meeting with Laura Mundell, Tourneau's Director of HR, "to discuss her harassment and discrimination complaint," which, like the October 11 complaint, is hard to read as *not* referencing the alleged language policy. (AC ¶ 54.) Courts regularly hold complaints to HR, both formal and informal, about conduct a plaintiff believes in good faith was illegal under discrimination laws, constitute protected activity. *See Hamilton v. Siemens*

*Healthcare Diagnostics, Inc.*, No. 23-CV-7408, 2026 WL 880547, at *11 (S.D.N.Y. Mar. 31, 2026) ("The filing of an internal complaint with HR can constitute a protected activity if the complaint 'complains or is critical about the discriminatory employment practices of [the] employer.'" (quoting *Littlejohn*, 795 F.3d at 318)); *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) (finding complaint about discrimination to HR was protected activity). Likewise, while the allegations regarding Plaintiff's meeting with Villot, like much of the AC, are "heavy on legal argument and light on facts," *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *1 (S.D.N.Y. Sept. 29, 2020), there is enough to reasonably infer Plaintiff complained about the language policy Petrova implemented, (*see* AC ¶ 69–70 (noting Villot's comments about Petrova's "language directive," which allows the reasonable inference that Plaintiff mentioned it to him)). That complaint, too, was plausibly protected activity. *See Lewis v. Am. Sugar Refining, Inc.*, 325 F. Supp. 3d 321, 357 (S.D.N.Y. 2018) (explaining, in Title VII context, that making "informal complaints to management, for example, is a protected activity"); *see also Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 296 (S.D.N.Y. 2016) (same); *Amin v. Akzo Nobel Chems., Inc.*, 282 F. App'x 958, 961 (2d Cir. 2008) (summary order) (same).

Defendants next argue Plaintiff does not make out a causal link between her termination and any protected activity, largely because of the duration between her protected activity and her termination. (Defs.' Mem. 23–24.) The "[c]ausation" element of a retaliation claim "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). But Defendants wrongly assume the only adverse action for Plaintiff's retaliation claim is her termination. The adverse employment action standard for *retaliation* is less demanding than for

*discrimination*, as Plaintiff notes. (*See* Pl.'s Mem. 11.) A plaintiff need only "demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)); *see also Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986, at *12 (S.D.N.Y. May 31, 2024) (explaining that in the § 1981 context, adverse action is that which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and is "not limited to discriminatory actions that affect the terms and conditions of employment" (first quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and then quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023)). Courts have held placement on a performance improvement plan, or "PIP," in response to protected conduct—a functional equivalent of a corrective action document—is reasonably likely to deter an employee from protected conduct because of its implicit threats of discipline or termination, and thus can satisfy the third element at the pleading stage. *See, e.g.*, *Anderson*, 2024 WL 2801986, at *12 ("[I]t's plausible that being put on a PIP 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (quoting *White*, 548 U.S. at 68)); *Taylor v. CSC Holdings, LLC*, No. 17-CV-4407, 2019 WL 13412420, at *15 (E.D.N.Y. Sept. 30, 2019) (same); *James v. Countrywide Fin. Corp.*, No. 10-CV-4953, 2012 WL 6923758, at *6 (E.D.N.Y. Oct. 11, 2012) (same). Here, Plaintiff has plausibly connected her CAD to her protected activity, even under § 1981's more demanding but-for causation standard. She claims that "[l]ess than one month" before her firing," Petrova gave her a CAD that explicitly referenced Plaintiff's "conduct of reporting her concerns of discrimination, harassment, and retaliation"—which, as explained

above, was plausibly protected activity—and that Petrova gave it to her with additional "verbal instructions" that she should not make further complaints to HR.[9] (AC ¶ 80.)

Finally, Defendants argue Petrova may not be held individually liable for retaliation under the NYSHRL. (*See* Defs.' Mem. 22 n.13.) That position is at odds with the statutory text, which explicitly contemplates individual liability. *See* N.Y. Exec. L. § 296(7) (providing that "[i]t shall be an unlawful discriminatory practice for *any person* . . . to retaliate or discriminate against any person because" of the latter's protected activity under the statute); *see also Reichert*, 2026 WL 867137, at *9 (explaining that § 296(7)'s anti-retaliation provision, unlike § 296(1), does not include language limiting liability to employers).

Accordingly, the Court denies Defendants' Motion as to Plaintiff's § 1981 and NYSHRL retaliation claims against Petrova.

III. Conclusion

For the reasons set forth above, the Court grants the Motion as to Petrova's individual liability under the NYSHRL and § 1981, otherwise denies it. Because the Court has already given Plaintiff leave to amend and because Defendants' pre-motion letter put Plaintiff on notice

[9] Even if the CAD were not a plausible adverse action for Plaintiff's retaliation claim, Plaintiff's termination has enough of a causal connection to her protected activity to survive a motion to dismiss. The alleged timeline supports a plausible inference that retaliation was the cause of her termination—Plaintiff's latest protected activity was the Villot meeting in November 2024, she received a CAD mentioning her protected activity in December 2024, and she was fired in January 2025. (*See* AC ¶¶ 62, 81.) "Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, . . . five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *see also Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (summary order) (holding jury was "entitled to find that there was a causal connection" between protected activity and adverse action four months later, which was not beyond "outer limit" for causation). The temporal proximity here is around two months, with an intervening event—the CAD—plausibly connecting Plaintiff's earlier protected activity to her subsequent termination.

of the deficiencies in the Complaint, the claims dismissed herein are dismissed with prejudice. *See Kirkland-Hudson*, 665 F. Supp. 3d at 472; *see also McCormick v. Spano*, No. 19-CV-2916, 2026 WL 1329862, at *6 (S.D.N.Y. May 13, 2026). The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 11, 19).

SO ORDERED.

Dated: September 28, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge